JACK SMITH
Chief
MONIQUE T. ABRISHAMI
PETER N. HALPERN
Trial Attorneys
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave. NW
Washington, D.C. 20005
Tel: 202-514-1412
Fax: 202-514-3003



FILED _____ LODGED
RECEIVED _____ COPY
NOV 21 2014
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>RAUL F. PORTILLO,<br>Defendant. | PLEA AGREEMENT<br>No. 4:11-CR-3047-JAS-CRP<br>Violation: 18 U.S.C. § 371 (conspiracy) |

### PLEA AGREEMENT

The United States of America, by and through the undersigned attorneys for the Public Integrity Section, Criminal Division, United States Department of Justice, and Raul F. Portillo (hereinafter referred to as the "defendant") enter into the following Plea Agreement:

**Charges and Statutory Penalties**

1. The defendant agrees to plead guilty to an Information charging him with a violation of 18 U.S.C. § 371 (conspiracy to commit bribery and to interfere with commerce by attempted extortion).

2. The essential elements of conspiracy to commit bribery are (1) the public official's agreement with at least one other person to demand, seek, receive, accept, and agree to accept something of value for being influenced in the performance of an official act; (2) the defendant's joining the conspiracy knowing of its objects and intending to help accomplish them; and (3) one of the members of the conspiracy performing at least one overt act for the purpose of carrying out the conspiracy.

3. The essential elements of conspiracy to interf with commerce by attempted extortion are (1) an agreement between at least two people to attempt to commit extortion, as defined by 18 U.S.C. § 1951; (2) the defendant's joining the conspiracy knowing of its objects and intending to help accomplish them; and (3) one of the members of the conspiracy performing at least one overt act for the purpose of carrying out the conspiracy.

4. The defendant understands that a violation of 18 U.S.C. § 371 is punishable by a maximum sentence of five years imprisonment, a maximum fine of up to $250,000, or both, and a term of supervised release of three years.

5. If the Court accepts the defendant's plea of guilty and the defendant fulfills each of the terms and conditions of this Agreement, the United States agrees that it will dismiss the pending Indictment against the defendant and not further prosecute the defendant for any crimes described in the attached factual basis or for any conduct of the defendant now known to the Public Integrity Section and to the law enforcement agents working with the Public Integrity Section on the present investigation. Nothing in this Agreement is intended to provide any limitation of liability arising out of any acts of violence.

**Factual Stipulations**

6. The defendant agrees that the attached "Factual Basis for Plea" fairly and accurately describes the defendant's actions and involvement in the offense to which the defendant is pleading guilty. The defendant knowingly, voluntarily, and truthfully admits the facts set forth in the Factual Basis for Plea.

**Sentencing**

7. The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the

Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise that advisory sentence up to and including the statutory maximum sentence or lower that advisory sentence. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

8. The United States reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Agreement, the United States further reserves the right to make any recommendation as to the quality and quantity of punishment.

9. The defendant will cooperate fully with the probation office. Such cooperation will include truthful statements in response to any questions posed by the probation office, including but not limited to:

    a. all criminal history information, *i.e.*, all criminal convictions as defined under the Sentencing Guidelines;

    b. all financial information, *e.g.*, present financial assets or liabilities that relate to the defendant's ability to pay a fine or restitution;

    c. all history of drug abuse that would warrant a treatment condition as a part

of sentencing; and

    d.    all history of mental illness or conditions that would warrant a treatment condition as a part of sentencing.

10.    The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not binding on the United States, the probation office, or the Court, except as expressly provided in this Agreement.

11.    The Court will consider at the time of sentencing the application of the Sentencing Guidelines, issued pursuant to the Sentencing Reform Act of 1984, although the Sentencing Guidelines are only advisory in nature. The United States and the defendant understand and agree that the applicable offense section for establishing the base offense level is § 2C1.1(c)(1), which provides that when, as here, the offense was committed for the purpose of facilitating the commission of another offense—namely, the unlawful trafficking of cocaine (including possession with the intent to commit trafficking of cocaine)—the Court will apply § 2D1.1 because it will result in a greater offense level. The United States and the defendant further agree that a two-level enhancement pursuant to § 3C1.1 ("Obstructing or Impeding the Administration of Justice") applies.

12.    The Court will also

    a.    order the defendant to make restitution to any victim of the offense; and

    b.    order the defendant to pay a fine, which may include the costs of probation, supervised release, or incarceration, unless, pursuant to 18 U.S.C. § 3611 and U.S.S.G. § 5E1.2(f), the defendant establishes the applicability of the exceptions found therein.

13.    Pursuant to 18 U.S.C. § 3013, the Court is required to impose a special assessment on the defendant of $100 per felony count. The special assessment is due at the time the defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

14. Nothing in this Agreement shall be construed to protect the defendant in any way from prosecution for perjury, false declaration, or false statement, or any other offense committed by the defendant after the date of this Agreement. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this Agreement may be used against him in all such prosecutions.

15. The United States will not object if the Court sentences the defendant to a term of imprisonment to run concurrently with any prison sentence the defendant receives in <u>State v. Raul Francisco Portillo</u>, CR2004-191 (Santa Cruz County Superior Court, Arizona).

**Court Not Bound by the Plea Agreement**

16. It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Sentencing Guidelines range, or as to other sentencing issues. In the event that the Court considers any Sentencing Guidelines adjustments, departures, or calculations different from any stipulations contained in this Agreement, or contemplates a sentence outside the Sentencing Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court.

**Appeal Waiver**

17. The defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal. The defendant is also aware that he may, in some circumstances, be able to argue that his guilty plea should be set aside, or sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255). Knowing that, and in consideration of the concessions made by the United States in this Agreement, the defendant knowingly and voluntarily waives his right to appeal or collaterally challenge: (a) his guilty plea and any other aspect of the defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and (b) the defendant's sentence or the manner in which his sentence was determined pursuant to 18 U.S.C. §3742, except to the extent that the Court sentences the defendant to a period of imprisonment longer than the statutory

maximum, or the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. § 5K.2 or based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). Nothing in this Agreement shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

18. The defendant further understands that nothing in this Agreement shall affect Public Integrity's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this Agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this Agreement with the defendant's attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

19. The defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in Ninth Circuit or Supreme Court cases decided after the date of this Agreement that are held by the Ninth Circuit or Supreme Court to have retroactive effect.

**Breach of Agreement**

20. The defendant understands and agrees that if, after entering this Agreement, the defendant fails specifically to perform or to fulfill completely each and every one of the defendant's obligations under this Agreement, or engages in any criminal activity prior to sentencing, the defendant will have breached this Agreement. In the event of such a breach: (a) the United States will be free from its obligations under the Agreement; (b) the defendant will not have the right to withdraw the guilty plea; (c) the defendant shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the United States will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements made by the defendant and any of the information or materials provided by the defendant, including

such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Agreement, including the defendant's statements made during proceedings before the Court pursuant to Federal Rule of Criminal Procedure 11.

21. The defendant understands that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights which arise under these rules.

22. The defendant understands and agrees that the United States shall only be required to prove a breach of this Agreement by a preponderance of the evidence. The defendant further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Agreement.

23. Nothing in this Agreement shall be construed to permit the defendant to commit perjury, to make false statements or declarations, to obstruct justice, or to protect the defendant from prosecution for any crimes not included within this Agreement or committed by the defendant after the execution of this Agreement. The defendant understands and agrees that the United States reserves the right to prosecute the defendant for any such offenses. The defendant further understands that any perjury, false statements or declarations, or obstruction of justice relating to the defendant's obligations under this Agreement shall constitute a breach of this Agreement. However, in the event of such a breach, the defendant will not be allowed to withdraw this guilty plea.

**Waiver of Statute of Limitations**

24. It is further agreed that should any conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the United States has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement

and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

### Forfeiture, Civil, and Administrative Proceedings

25. Nothing in this Agreement shall be construed to protect the defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.

26. The defendant will identify all assets and identify the source of income used to obtain the assets. The defendant will identify all assets used to facilitate the commission of any crime charged in this indictment. The defendant will testify truthfully in any civil forfeiture proceedings.

27. Further, this Agreement does not preclude the United States from instituting any civil or administrative proceedings as may be appropriate now or in the future.

### Complete Agreement

28. No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by the defendant, defense counsel, and a prosecutor for the Public Integrity Section.

29. The defendant further understands that this Agreement is binding only upon the Public Integrity Section, Criminal Division, United States Department of Justice. This Agreement does not bind the Civil Division or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against the defendant.

Respectfully submitted,

JACK SMITH  
Chief  
Public Integrity Section

By: _____  
Monique T. Abrishami  
Peter N. Halpern  
Trial Attorneys  
Public Integrity Section

## DEFENDANT'S ACCEPTANCE

I have read this Agreement in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my Agreement with the United States. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crime to which I have agreed to plead guilty, the maximum penalty for that, offense, and the Sentencing Guideline penalties potentially applicable to the offense. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offense to which I am pleading guilty, and I believe this Agreement is in my best interest.

Date: 11/21/14

RAUL F. PORTILLO
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Agreement, reviewed them with my client, and discussed the provisions of the Agreement with my client, fully. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 11/21/14

DAVID LIPARTITO, Esquire
Attorney for the Defendant

JACK SMITH
Chief
MONIQUE T. ABRISHAMI
PETER N. HALPERN
Trial Attorneys
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave. NW
Washington, D.C. 20005
Tel: 202-514-1412
Fax: 202-514-3003

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | FACTUAL BASIS |
| v. ) | No. 4:11-CR-3047-JAS-CRP |
| RAUL F. PORTILLO, ) | Violation: 18 U.S.C. § 371 (conspiracy) |
| Defendant. ) | |

### FACTUAL BASIS FOR PLEA

The United States and the defendant, Raul F. Portillo, stipulate and agree to the following:

1. At all times relevant to the conspiracy charge to which Portillo is pleading guilty, he was a Sergeant in the Arizona Army National Guard ("AANG"). After the terrorist attacks of September 11, 2001, the AANG was deployed pursuant to a Presidential Executive Order to assist various federal departments and agencies, including the Department of Defense and the United States Border Patrol, to support drug interdiction and other counter narcotics activities.

2. From in or about January 2002, and continuing at least through in or about April 2002, in the District of Arizona and elsewhere, Portillo and other public officials, including other members of the AANG, members of various branches of the United States military, police officers, corrections officers, and employees of various federal departments and agencies, agreed to enrich themselves by obtaining money from persons who represented themselves to be narcotics traffickers ("the narcotics traffickers"), but who were in fact Special Agents of the Federal Bureau of Investigation ("FBI"), in return for the defendant and his co-conspirators using their official

positions to assist, protect, and participate in the activities of what was represented to be an illegal narcotics trafficking organization (the "Organization") engaged in the business of transporting and distributing cocaine and other drugs from Arizona to other locations in the southwestern United States.

3. In or about January 2002, Portillo told an individual who represented himself to be a member of the Organization that he had been involved in narcotics trafficking in the past. Portillo then offered to transport narcotics for the Organization.

4. On or about February 27, 2002, Portillo and five other public officials transported a total of 30 kilograms of cocaine for the Organization from Tucson, Arizona, to Las Vegas, Nevada. In order to protect the cocaine from police stops, searches, and seizures, Portillo and the other public officials wore their official uniforms, carried their official forms of identification, and transported the cocaine in official vehicles. Thereafter, Portillo accepted $6,000 in cash from the narcotics traffickers in return for using his official position to facilitate the activities of the Organization.

5. On or about April 16, 2002, Portillo and three other public officials transported a total of 20 kilograms of cocaine for the Organization from Nogales, Arizona, to Tucson, Arizona. In order to protect the cocaine from police stops, searches, and seizures, Portillo and the other public officials wore their official uniforms, carried their official forms of identification, and transported the cocaine in official vehicles. Thereafter, Portillo accepted $6,000 in cash from the narcotics traffickers in return for using his official position to facilitate the activities of the Organization.

6. In or about April 2002, Portillo accepted $2,000 in cash in return for recruiting another public official to participate in the conspiracy.

7. On or about May 25, 2011, Portillo was arrested pursuant to a 2006 arrest warrant that had been issued in the above-captioned case. On May 26, 2011, Portillo was released by a magistrate judge after signing an order setting conditions of release and appearance bond. Among

the conditions of that order were that Portillo was to report as directed to his Pretrial Officer and was immediately to advise his attorney and pretrial services, in writing, prior to any change in residence address, mailing address, or telephone number. In violation of that order, on or about July 5, 2011, Portillo failed to report by phone to his Pretrial Officer. On or about July 11, 2011, the Pretrial Officer conducted a home visit to Portillo's listed address. The Pretrial Officer found Portillo's residence vacant and unoccupied.

8.  In or around July 2011, Portillo fled the area in order to avoid arrest or prosecution. In or around September 2014, Portillo was arrested in Mexico and returned to the United States for prosecution.

Respectfully submitted,

JACK SMITH
Chief
Public Integrity Section

By: _____
Monique T. Abrishami
Peter N. Halpern
Trial Attorneys
Public Integrity Section

## DEFENDANT'S ACCEPTANCE

I have read this Agreement in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my Agreement with the United States. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crime to which I have agreed to plead guilty, the maximum penalty for that, offense, and the Sentencing Guideline penalties potentially applicable to the offense. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offense to which I am pleading guilty, and I believe this Agreement is in my best interest.

Date:_____  _[signature]_
RAUL F. PORTILLO
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Agreement, reviewed them with my client, and discussed the provisions of the Agreement with my client, fully. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 11/21/14  _[signature]_
DAVID LIPARTITO, Esquire
Attorney for the Defendant